

FILED
John E. Triplett, Acting Clerk
United States District Court

By CAsbell at 3:33 pm, Dec 31, 2020

**FIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

| | |
|---|---|
| JOSEPH HALL, JR., | |
| Plaintiff, | CIVIL ACTION NO.: 6:19-cv-23 |
| v. | |
| GEORGIA STATE PRISON OFFICIALS, et al., | |
| Defendants. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion to Amend and Defendants' Motion to Dismiss and Renewed Motion to Dismiss. Docs. 14, 17, 18. Plaintiff, who is housed at Georgia State Prison in Reidsville, Georgia, submitted a 42 U.S.C. § 1983 Complaint to contest certain conditions of his confinement. Doc. 1. In response to an Order from this Court, Plaintiff moved to amend his Complaint to identify two previously unidentified Defendants (Defendants Sgt. Mrs. Howard and C.E.R.T. Sissio). Docs. 8, 17. Defendants Chambers, Cook, Deal, Jackson, Michell, Powell, Sistrunk, and Williams have moved to dismiss all of Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies and Plaintiff fails to state a claim against Defendants Deal and Hutchinson.[1] Doc. 14. Defendants filed a Renewed Motion to

---

[1] Defendants Michell, Sistrunk, and Williams filed their Motion to Dismiss before Defendants Hutchinson, Chambers, Jackson, Powell, and Cook were served and before Defendants Howard and Sissio were identified. Defendants Chambers, Cook, Deal, Jackson, and Powell later joined as movants by filing a Reply to Plaintiff's Response. Doc. 23. Additionally, Defendants Howard and Sissio are not movants because the Court has not yet ordered service on these Defendants. However, the Court sees no reason why the absence of these Defendants should delay ruling on the Motion to Dismiss presently before the Court. As explained herein, the claims against all Defendants are identical, as is the failure to exhaust analysis. Therefore, the Court proceeds with its analysis, and the recommended ruling applies equally to Defendants Howard and Sissio, despite their absence.

Dismiss, incorporating their previous arguments and addressing Plaintiff's proposed Amended Complaint. Docs. 14, 18. For the reasons set forth below, I **GRANT** Plaintiff leave to amend his Complaint. I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss, docs. 14, 18, **DISMISS without prejudice** Plaintiff's cause of action based on his failure to exhaust his administrative remedies, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Plaintiff leave to appeal *in forma pauperis*.

## PRELIMINARY MATTERS

In response to this Court's Order directing Plaintiff to supplement his Complaint, doc. 8, Plaintiff filed an Amended Complaint, docketed as a Motion to Amend, identifying the two previously unnamed Defendants in this action, doc. 17. Plaintiff identifies these Defendants as Sgt. Mrs. Howard and C.E.R.T. Sissio. Doc. 17 at 2. As this filing is a response to the Court's Order directing Plaintiff to supplement, I **GRANT** Plaintiff's Motion to Amend. Id. The Court will consider Plaintiff's Amended Complaint and previous filing collectively as "Plaintiff's Complaint." Aside from adding Defendants Howard and Sissio, Plaintiff's amendment does not change the allegations contained in his Complaint in any material way.

## BACKGROUND

Plaintiff's claims are based on events occurring at Georgia State Prison in February 2019. Doc. 1. On February 18, 2019, prison officials attempted to place Plaintiff in a cell with inmate John White. Id. According to Plaintiff, White did not want to share a cell with Plaintiff because he believed Plaintiff is homosexual, but ultimately, White allowed Plaintiff in his cell after prison officials threatened to tase him. Id. at 8. On February 20, 2019, prison officials removed White from the shared cell after he started a fire that nearly suffocated Plaintiff. Id. at 7–8.

Then, on February 27, 2019, prison officials, acting on directions from the unit manager, Defendant Hutchinson, attempted to return White to Plaintiff's cell. Id. at 6, 8.

While returning White, Defendants Chambers, Michell, and Sistrunk ordered Plaintiff to put on cuffs. Id. Plaintiff initially refused to wear the cuffs out of fear for his safety and was "maced" in response. Id. at 8. According to Plaintiff, White was again protesting his placement with Plaintiff, but Defendants Jackson, Powell, Cook, Williams, Chambers, Michell, and Sistrunk, along with now-identified Defendants Howard and Sissio, dragged White into the cell with Plaintiff. Id. at 6. After securing the cell door, prison officials removed White's handcuffs while Plaintiff remained cuffed. Id. White then proceeded to assault Plaintiff. Id. at 6, 7. After prison officials stopped the assault, Plaintiff was removed from the cell and passed out, hitting his head on the floor. Id. at 7. Plaintiff alleges he was denied medical treatment for his concussion until a week later. Id.

After the events in February, Plaintiff filed a grievance against several of the Defendants. Id. at 3. Plaintiff states he received a response from Warden Deal denying the grievance. Id. In Plaintiff's Complaint, Plaintiff avers he did not appeal the grievance because he intended to file this § 1983 suit, and he was concerned the grievance process would cause a long delay. Id. at 4.

On July 10, 2020, Defendants filed a Motion to Dismiss for failure to state a claim and for failure to exhaust administrative remedies. Doc. 14. Plaintiff then filed his Motion to Amend, identifying the two previously unidentified officers. Doc. 17. Defendants filed a Renewed Motion to Dismiss. Doc. 18.[2] The Court then ordered Plaintiff to respond to the

---

[2] Defendants, in their Renewed Motion to Dismiss, incorporated their Motion to Dismiss by reference and additionally asked this Court to dismiss for failure to prosecute, based on Plaintiff's failure to timely respond to Defendants' initial Motion to Dismiss Doc. 18 at 2. The Court then ordered Plaintiff to respond to Defendants' Motion to Dismiss again, doc. 19, which Plaintiff did, doc. 22. Therefore, the Court will not address Defendants' request to dismiss for failure to prosecute. Further, Plaintiff's

3

Renewed Motion to Dismiss. Doc. 19. Plaintiff filed his Response on August 18, 2020. Doc. 22. Defendants filed a Reply, doc. 23, to which Plaintiff filed a Surreply, doc. 24.

Plaintiff's Response to Defendants' Motion to Dismiss provides a different version of events regarding his exhaustion of administrative remedies. Plaintiff alleges he was initially denied an "emergency grievance" by Ms. Chester. Doc. 22 at 3. Plaintiff also states prison officials prohibited him from filing an appeal. Id. at 8. Finally, Plaintiff contends he did file an appeal to the Central Office on May 16, 2019.[3] Id. at 9. Plaintiff attached the receipt for the grievance appeal to his Response. Id. at 14.

## DISCUSSION

Defendants argue Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies and because Plaintiff fails to state a claim against Defendants Hutchinson and Deal. For the following reasons, I find Plaintiff did not effectively exhaust his administrative remedies before filing this suit and **RECOMMEND** the Court **GRANT** Defendants' Renewed Motion to Dismiss. Doc. 18. Because I find Plaintiff did not exhaust his administrative remedies, I decline to address Defendants' argument that Plaintiff fails to state a claim against Defendants Hutchinson and Deal.

**I.  Exhaustion**

   **A.  PLRA's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance

---

Surreply, doc., 24, addresses Defendants' failure to prosecute argument, but because Plaintiff did in fact respond to Defendants' Motion to Dismiss, the Court will not separately address these arguments either.

[3]  Plaintiff states he submitted the appeal on May 16, 2019, but the form bears May 6, 2019 as the date submitted. Notably, this suit was filed well before either date.

4

procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm

5

suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

The procedural steps prisoners must follow to fully exhaust are set out by their prison's administrative grievance policies. Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison."). Proper exhaustion requires prisoners do more than simply initiate a grievance; they must correctly follow all procedural rules set out in the institution's policy—

6

including time limits—and must appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."); Sewell, 2007 WL 201269, at *4 (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B.   Georgia Department of Corrections' Grievance Procedures

The Georgia Department of Corrections' general grievance policies are set out in Standard Operating Procedure ("SOP") Policy Number 227.02 ("Statewide Grievance Procedure"). Whatley I, 802 F.3d at 1208; Doc. 14-3. The Statewide Grievance Procedure contains the procedures that inmates must follow to effectively exhaust their administrative remedies. See Whatley v. Smith (Whatley II), 898 F.3d 1072, 1074 (11th Cir. 2018) ("To exhaust administrative remedies under the Georgia Department of Corrections Standard Operating Procedures ("SOP"), inmates must follow the . . . prison grievance process outlined in SOP IIB05-0001."). Under the Statewide Grievance Procedure, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" which "affects the offender personally" and which is not explicitly listed in the SOP as a "non-grievable issue." Doc. 14-3 at 4.

The SOP requires inmates to file grievances within 10 days of becoming aware of the facts from which the grievance arises. Id. at 7. The grievance is screened by a Grievance Coordinator, who determines whether to accept the grievance for processing. Id. The Grievance Coordinator may also excuse an inmate who files an untimely grievance. Id. at 7–8. If the grievance is accepted for processing, the warden has 40 days to review the grievance and

determine whether to grant or deny it.  Id. at 10.  The inmate can then file a Central Office Appeal if the Grievance Coordinator rejects the grievance, the inmate receives a decision from the Warden, or the time allowed for the Warden's decision has elapsed.  Id. at 11.  An inmate has seven days from the date the inmate receives a response to the grievance to file a Central Office Appeal.  Id.  The Commissioner then has 120 days to deliver a decision on the Central Office Appeal.  Id. at 12.

### C.     Standard of Review for Exhaustion

Defendants may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari, 729 F. App'x at 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion.").  "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies."  Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded that "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be

8

'capable of use for the accomplishment of its purpose.'")).  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."  Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  Ross, 136 S. Ct. at 1859.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones").  Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it."  Ross, 136 S. Ct. at 1859–60.  Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust.  Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a).  541 F.3d at 1082.  First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in

9

the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1. This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

**D.     Applying Turner**

Plaintiff states in his Complaint he filed a grievance, which the Warden denied, and he did not pursue a Central Office appeal. Doc. 1 at 3. Plaintiff explains he did not appeal the grievance because he intended to file this § 1983 suit, and he was concerned the grievance process would cause a long delay. Id. at 4. In Plaintiff's Response to Defendants' Motion to Dismiss, however, he avers he did attempt to pursue an appeal but was prohibited from appealing by prison officials. Doc. 22 at 8, 9. Additionally, he filed a Central Office Appeal on May 6, 2019, and provided a receipt for that appeal. Id. at 10, 14

Defendants make several arguments in favor of dismissal. First, they argue that, because Plaintiff did not specifically name Defendants Deal, Chambers, Cook, and Williams in his grievance, he did not exhaust his administrative remedies as to these Defendants. Doc. 14-1 at 4, 12. Next, Defendants argue that, looking solely at Plaintiff's Complaint, he did not effectively exhaust his administrative remedies. Id. at 12. Further, Defendants contend the Court should ignore the allegations Plaintiff makes in his Response regarding prison officials' refusal to allow him to appeal his grievance. Doc. 23 at 2–3. They urge the Court to focus on Plaintiff's Complaint and his admission therein that he chose not to appeal because of his desire to file suit. Id. at 3. Finally, Defendants claim Plaintiff's May 16, 2019 Central Office appeal is untimely and, therefore, cannot satisfy the PLRA's exhaustion requirements. Id.

   *1.     Turner Step One.*

The Court looks first, as it must, to Plaintiff's account regarding exhaustion.[4] Turner, 541 F.3d at 1082. Looking solely at Plaintiff's Response, his allegations are enough to survive a

---

[4]   Defendants urge the Court to consider the statements in Plaintiff's Complaint and find he failed to exhaust his administrative remedies. The Court, however, must also look to the factual allegations contained in Plaintiff's Response. See Turner, 541 F.3d at 1082 (stating that courts must look to the factual allegations contained in the plaintiff's responsive pleadings).

11

motion to dismiss for failure to exhaust his administrative remedies under the first prong of the Turner test.

Plaintiff alleged in his grievance he was attacked by an unnamed inmate and complained of "staff negligence" but failed to name Defendants Deal, Chambers, Cook, and Williams. Doc. 14-4. While the Court dismissed Plaintiff's claims against Defendant Deal during frivolity review, still pending are claims against Defendants Chambers, Williams, and Cook. Defendants argue that, because Defendants Chambers, Williams, and Cook were not named by Plaintiff in his grievance, he failed to exhaust administrative remedies. Doc. 14-1 at 4, 12. Defendants are incorrect. Plaintiff, in his grievance, is only required to "provide as much information as he reasonably can" and is not required to "name each defendant in a grievance in order to properly exhaust a claim." Williams v. Barrow, 559 F. App'x 979, 986 (11th Cir. 2014) (citing Jones, 549 U.S. at 219, and Brown, 212 F. 3d at 1207). Thus, Plaintiff's failure to expressly name three Defendants in his grievance does not mean he failed to exhaust his administrative remedies as to these Defendants.

In his Response, Plaintiff states Ms. Chester told him an emergency grievance does not exist. Doc. 22 at 3. This statement is immaterial. Plaintiff does not explain how an emergency grievance relates to his failure to file an appeal, as is necessary before bringing a § 1983 claim. Plaintiff then alleges prison officials "unlawfully prohibited" him from filing an appeal and further that "Defendants [coerced]" and conspired with various counselors to stifle his appeal. Id. at 7, 10. That is, Plaintiff alleges the appeals process was unavailable to him or prison officials otherwise interfered with his ability to appeal. These allegations, taken as true, are enough to excuse Plaintiff from exhausting his administrative remedies. Ross, 136 at 1860; Abram, 2019 WL 76849, at *2 ("An administrative remedy may be unavailable when prison

12

officials interfere with a prisoner's pursuit of relief."). The Court now turns to Turner's second step.

### 2. *Turner* Step Two.

In his Complaint, Plaintiff states he did not appeal the denial of his grievance because doing so would be futile and would only delay filing suit against Defendants. Doc. 1 at 3. On that basis, Defendants filed their Motion to Dismiss for failure to exhaust. Doc. 14-1 at 12. As explained above, Plaintiff provided additional details regarding his failure to appeal his grievance in his Response. Defendants urge the Court to consider the contradiction between Plaintiff's Response and his Complaint, conclude his Response is not anchored in facts, and find any new allegations are eclipsed by the admission in his Complaint that Plaintiff chose not to appeal because he wanted to file a lawsuit. Doc. 23 at 2–3.

The parties' arguments implicate a factual question as to whether Plaintiff's allegations in his Response are true. "[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts." Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008). Nevertheless, a district judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)). Similarly, the Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment. See Womack, 2008 WL 4104148 at *5 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)). Thus, to the extent Plaintiff relies upon his own self-serving allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005).

This analysis begins with the burden. Failure to exhaust is an affirmative defense which, like other affirmative defenses, puts the burden of proof squarely on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 2019 WL 76849, at *4 (11th Cir. Jan. 2, 2019) (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Womack, 2008 WL 4104148, at *6 (quoting Jeffreys, 426 F.3d at 555).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue"). Here, both parties have submitted affidavits or evidence on the issue of exhaustion, as well as replies, responses, or surreplies.

Defendants have demonstrated Plaintiff did not timely exhaust his administrative remedies before filing suit. Indeed, it is undisputed Plaintiff did not appeal his grievance before initiating this action. Plaintiff claims he was prevented from appealing, but, aside from self-serving, unsupported statements, Plaintiff has not demonstrated any Georgia State Prison officials prohibited him from appealing his grievance before to filing suit. Plaintiff's self-serving statements are highly suspect given his earlier representations and the evidence offered by Defendants. See Womack, 2008 WL 410418, at *6 (holding plaintiff's self-serving statements were inadequate to show that administrative remedies were unavailable). And it is well established that a "[p]laintiff cannot show that administrative remedies were unavailable simply by making a blanket allegation without any supporting evidence." Id.

Furthermore, the evidence here does not support Plaintiff's contention he was prevented from filing an appeal. First, Plaintiff does not even address his initial representations in his Complaint, where he states he decided not to file an appeal because doing so would take too long, and he wanted to pursue litigation. Instead, he ignores his prior statement and focuses solely on his new narrative that he was prevented from appealing. Moreover, Plaintiff does not explain how he was prevented from filing a timely appeal or how he was able to appeal a short time later on May 6, 2019. Plaintiff provides no details about how he was prevented from appealing, who prevented him, or when that impediment was removed.

Defendants, relying on the sworn affidavit of Counselor Spells and Plaintiff's grievance history, contradict Plaintiff's narrative that prison officials prevented him from filing an appeal. Defendants submitted Plaintiff's grievance history, doc. 14-5, and an affidavit from Counselor Spells. Doc. 14-2. This evidence shows Plaintiff was able to file grievances, as well as appeals, throughout his time at Georgia State Prison. For example, Plaintiff's grievance history shows he

filed five appeals while at Georgia State Prison.  Doc. 14-5.  Additionally, after the February incident at issue in this suit, Plaintiff filed another grievance, on April 3, 2019, before filing this suit.  Id.  Plaintiff's grievance history demonstrates he was consistently able to file grievances and appeal those grievance, directly contradicting the unsupported, self-serving statements he makes in his Response.  See Kozuh v. Nichols, 185 F. App'x 874, 878 (11th Cir. 2006) (determining the district court properly held the plaintiff failed to exhaust administrative remedies, where, despite the plaintiff's contentions, evidence showed he was able to file numerous complaints).  Similarly, Plaintiff submits as his own exhibit a receipt for an appeal of his grievance relating to the incident.  Doc. 22 at 14.  But Plaintiff offers no explanation about what changed at Georgia State Prison which allowed him to file this out-of-time appeal.

Even if the grievance receipt is proper evidence of appeal, it shows Plaintiff did not exhaust prior to filing him Complaint.  Plaintiff's grievance appeal receipt is dated May 6, 2019.  Id.  Plaintiff filed his Complaint on April 4, 2019.  Doc. 1.  Plaintiff's evidence demonstrates he did not even begin the appeals process until after he filed suit.  The United States Supreme Court has noted exhaustion must be "proper."  Woodford, 548 U.S. at 92.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90–91.  In other words, an institution's requirements define what is considered exhaustion.  Jones, 549 U.S. at 218.  It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom, 223 F.3d at 1261.  The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit.  Id.  Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels

16

of review that comprise the agency's administrative grievance process.  Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson, 418 F.3d at 1157); Sewell, 2007 WL 201269 (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).  Here, Plaintiff's proffered evidence shows he failed to appeal his grievance before filing suit.  Therefore, Plaintiff failed to exhaust his administrative remedies.

In sum, Plaintiff's initial contention was he voluntarily elected to not appeal the denial of his grievance.  Defendants' evidence shows Plaintiff was able to file both grievances and appeals during the time Plaintiff was incarcerated at Georgia State Prison.  Plaintiff offers only a self-serving, conclusory statement that he was prevented from timely appealing the denial in this case.  But this is not enough.  Plaintiff must present "some evidence beyond [his] own self-serving statements showing that administrative remedies were not available."  Womack, 2008 WL 4104148, at *8.  Plaintiff fails to do so.  In fact, the only evidence Plaintiff offers proves that he was, in fact, able to file an appeal—but did so after he filed the Complaint in this case.  The evidence ultimately leads to the conclusion the grievance process was available to Plaintiff and Plaintiff voluntarily skipped the grievance appeals process in order to file suit.  Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss for failure to exhaust administrative remedies.

## II.     Leave to Appeal *in Forma Pauperis*

Should the Court adopt my proposed recommendation, the Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P.

24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing reasons, I **GRANT** Plaintiff leave to amend his Complaint. I **RECOMMEND** the Court **GRANT** Defendants' Renewed Motions to Dismiss, docs. 14, 18, **DISMISS without prejudice** Plaintiff's cause of action based on his failure to exhaust his administrative remedies, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 31st day of December, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA